CLARK, C. J., concurring in part; ALLEN, J., concurring.
The case agreed substantially sets forth these facts: The Dover Lumber Company, a corporation, owned certain rights to cut standing timber upon the lands of the West estate, situated within the Moseley Creek Drainage District. The timber was conveyed to plaintiff, with the privilege of removing it within a stipulated period, prior to the formation of the drainage district.
When the district was formed the plaintiff was not made a party nor served with summons, neither was the particular timber or the plaintiff referred to anywhere in the proceedings. No summons was issued against the plaintiff, and there was no apparent service upon it. *Page 164 
The owner of the land known as the West estate was a party and an assessment was levied against the land. The grounds upon which plaintiff asks injunctive relief are: (1) That plaintiff has had no notice of and is no party to the drainage proceeding; (2) that standing timber, the title to which has been severed from the land by conveyance, is not the subject of assessment under the statute. It is contended that injunction is not the proper remedy.
The plaintiff was not only not served with summons or other notice in the drainage proceedings, but was not an apparent party. The judgment was, therefore, absolutely void as to it, and could be attacked collaterally. Had plaintiff been an apparent party and had there been apparent service on it, then the remedy would be by motion in the cause. Where it appears on the face of a legal proceeding that a party against whom execution is issued has not been made a party, and that there has been no service of summons, the judgment is void as to him and its enforcement will be restrained. Bowman v. Ward, 152 N.C. 602.
Our drainage statute is mandatory in requiring a "summons to be served on all the defendant landowners who have not joined in the petition and whose lands are included in the proposed drainage district." The drainage laws of North Carolina have been largely copied from the acts in Indiana and Illinois, and following the construction of (119) these acts in these and other States for the long period of time the acts have been in force, it is essential that notice of summons in all such proceedings be given to all parties who will be affected thereby.Sites v. Miller, 120 Ind. 19, citing numerous authorities; Kinney v.Ball, 68 Mich. 625; Curram v. Sidney Co., 47 Minn. 313; Baltimore,etc., R. R. v. Wagner, 43 Ohio State, 75. In those States it is held that where the mandate of the statute is that notice shall be given in the manner and for the time therein prescribed, before the time fixed for the hearing of the petition, failure to give this notice as required will render invalid any assessment against a person who is not so notified. Yolo Co.Reclamation District v. Burger, 122 Cal. 442; Craig v. People,188 Ill., 416; McMullen v. State, 105 Ind. 334.
In the Supreme Court of the United States it has been held in the enforcement of a drainage assessment, the question of due process of law does arise where the defense goes to the validity of the service. Hager v.Reclamation District, 111 U.S. 701.
The case of Banks v. Lane, 170 N.C. 14, differs materially from this. In that case it was held that where the landowner had been made a party and the land duly assessed, a mortgagee need not be made a party, as the proceeding is one in rem, and the draining of the land inured to his *Page 165 
benefit as well as to that of the mortgagor; hence the mortgagee could not restrain the collection of the assessment.
Upon rehearing, 171 N.C. 505, there were two concurring opinions, with one justice dissenting in toto. Mr. Justice Walker concurred in the decision that the remedy was by motion in the original proceedings, upon the ground that it did not appear affirmatively on the face of the Craven judgment that there was no service of the summons. The writer concurred upon the same ground, and further, that it did appear that the lands belonging to Mrs. Spivey were set out and embraced in the drainage proceedings and were duly assessed in her name as one of the landowners within the drainage district.
One of the essentials of a proceeding in rem is that the property sought to be charged shall be identified by description in the proceedings. Nothing of the sort appears in this drainage proceeding. The owner of the timber lease had no right to assume that his timber would be separately assessed because the owner of the land upon which it grew had been made a party. The assessment of the timber lease appears to have been an afterthought of the viewers, and does not appear to have been contemplated when the proceeding was first initiated.
The second position of plaintiff is that a timber lease does not come within the letter or spirit of the statute and is not assessable for drainage purposes. It appears to us that that proposition is (120) undoubtedly correct.
When standing timber is severed by conveyance from the land, with the right to cut and remove within a given period all timber of a certain size, it is no longer a part of the land. The owner of the timber is not a freeholder or landowner from the mere fact of owning a timber lease. It is true, we have held that timber is to be considered as land for purposes of conveyancing, but it does not follow the land after it has been so conveyed and is no longer a part and parcel of it.
The statute provides for issuing drainage bonds to be paid in annual installments by assessments on the lands. These assessments "shall constitute the first and paramount lien, second only to county and State taxes."
If the standing timber is assessable separate from the land, and if the assessment is a lien on the timber, the owner of the bond can restrain the cutting of the timber until the bonds are paid, and if the term for cutting is less than ten years, the owner of the timber would lose all of it, as he could not cut within the ten years and the timber not cut within that time would belong to the owner of the land.
The statute requires only landowners to be made parties in such drainage proceedings, and that the proceeding shall be initiated only by a *Page 166 
majority of the "resident landowners." It provides that for purposes of assessment the lands shall be divided into five classes, and that "the degree of wetness of the lands, its proximity to the ditch or a natural outlet, and the fertility of the soil shall be considered in determining the amount of benefit it will receive by the construction of the ditch." It is useless to quote further from the act. It is sufficient to say that its entire context plainly indicates that timber leases, such as the one held by plaintiff, do not come within its purview, and that its purpose is to facilitate the drainage of lands for agriculture.
It was well known to the General Assembly that much of the standing timber upon the lands of this State has been sold, with the right to cut and remove it limited, as in this case, to a few years. Had it been intended by the statute to embrace such leases within its terms, the Legislature would have said so and doubtless have provided a method of assessment measured by the benefit, if any, accruing to the timber exclusively during the actual existence of the lease, and not, as in this case, amounting to practical confiscation.
The judgment is reversed and the cause remanded to the Superior Court of Craven County with direction to enter judgment for plaintiff in accordance with this opinion.
Reversed.